VINCENT v. VINCENT.

No. 35500.   May 19, 1953.

257 P. 2d 512.

H. Tom Kight, Jr., and Ralph B. Brainard, Claremore, for plaintiff in error.

G. Raymond Bassmann and Jack E. Gordon, Claremore, for defendant in error.

BLACKBIRD, J. Defendant in error commenced this action as plaintiff against plaintiff in error, as defendant, to obtain a divorce on the ground of extreme cruelty. In answering her husband's said charges, defendant, in substance, denied she had been guilty of any conduct constituting grounds for divorce, and prayed that his petition be denied and that she be discharged with her costs of defending the action, including a reasonable attorney's fee.

The evidence adduced at the trial reveals that both parties were of mature years when they married in 1935, and no children have been born of the marriage, though defendant has a daughter by a previous one. Both parties have college educations, the defendant being a public school teacher by profession. When they were first married they lived at Claremore and defendant has continued her teaching, going to Tulsa about the year 1937, and purchasing a home with her school-teacher sister.

At the time of the marriage, plaintiff who had attended agricultural college, was then on a Rogers county farm which was lost by foreclosure shortly thereafter; and after an unsuccessful attempt at professional boxing in Florida, he returned to Rogers county and obtained intermittent employment with the Federal Government. In 1937 plaintiff's employment with the Farmer Home Administration took him to Delaware county. Until sometime thereafter, plaintiff's employment had not been permanent. During two, three or four of the years plaintiff was employed there, the defendant spent summers with him at or near Jay, Oklahoma. Since about 1942, plaintiff has been stationed at the Claremore office of the Administration and, until a short time before this action was filed, spent the weekends with defendant in her Tulsa home, where her aforementioned sister also resides.

The conduct principally relied upon to support plaintiff's charges of defendant's "extreme cruelty" toward him were things she did and said about his association with two women who at different times worked with plaintiff for the aforementioned government agency. The youngest of them had commenced her said employment in plaintiff's office at Jay, while the other was employed with that agency at Claremore. Plaintiff testified that defendant "falsely" accused him of infidelity to her in his relations with these two younger women and it is undisputed that she went to the State Director of the Farmers Home Administration and complained to him about this, charging that plaintiff was not sufficiently contributing to her support and had refused to assist her in paying a dental bill amounting to approximately $1,000. It appears that on one occasion when the younger of these women came to Tulsa, plaintiff visted her in her hotel room and defendant later learned he was there when she telephoned the room. Plaintiff testified that when defendant accused him of having improper relations with this woman, he admitted it, but further testified that such admission was untrue and denied any

romantic interest in the woman. The woman, herself, testified that after becoming employed in plaintiff's office at Jay in 1938, she commenced an association with him that included rides on horseback and in his automobile and developed into a "romantic situation." She further testified that this "association" progressed to the point where she and plaintiff had a tacit understanding that he would divorce defendant and marry her.

With reference to the other woman—the one employed in plaintiff's office at Claremore—plaintiff's testimony was to the effect that he had suffered indignity and embarrassment from defendant's contacting his State Director and attempting to get her transferred away from the Claremore office on the basis of the defendant's "false" accusations concerning his association with her, resulting in his being called to the Director's office, confronted with such charges, and told by the Director to get the situation "straightened out." He also testified that he understood or thought defendant had also telephoned the girl's parents and brother about the "affair." Defendant admitted that she telephoned the girl's father concerning the matter, but testified that she called him only after he had first phoned her at a time when she didn't want to discuss the matter on account of the presence of another person in her home. Defendant admitted that she watched, and after it became apparent that plaintiff was going to try to divorce her, hired an investigator to watch, this woman's apartment in Claremore and that she kept a record of some 60 visits by the plaintiff to said apartment, at least one of which did not terminate until the early morning hours.

In testifying to other circumstances that had brought about dissatisfaction or friction between the parties, plaintiff testified, in substance, that he liked country life and liked to handle livestock and wear cowboy clothes, while defendant liked a more "cultural" life and ridiculed his wearing of cowboy boots. He further testified that defend-

ant and her sister complained about his using bar bells to exercise with when in the Tulsa home. He further testified that defendant had repeatedly and continuously talked about and drawn comparisons between her family and his and talked about how "sorry" his was; that the defendant got to condemning the National administration and those that worked for it and this had been the subject of some arguments between her and her sister on one side and him on the other. Plaintiff further testified that after defendant and her sister purchased the home in Tulsa they told him they wouldn't ever want to live in a small town and "I have never felt like I wanted to take her to a small town, and I don't feel she would be satisfied." Plaintiff admitted that defendant's continuing to work in Tulsa was a matter of mutual agreement between him and defendant on the theory that two salaries were better than one, and it is indicated that defendant's salary in Tulsa was larger than she could have obtained in a similar position in smaller cities or towns. Plaintiff admitted that at one time he could have gotten his employer to transfer him to Tulsa, but he didn't do this because his duties there would have consisted mostly of collecting delinquent loans, taking him out of contact with the kind of farmers he liked, and he didn't believe he could have afforded to keep a riding horse there. Plaintiff admitted that defendant didn't like it because he didn't take the offered transfer to Tulsa.

It was shown that the parties had discussed the subject of acquiring a home together outside of Tulsa and that the defendant had offered to help plaintiff finance a business enterprise in Rogers county, but they had been unable to find a suitable one. Plaintiff admitted that defendant had offered to come to Claremore and live with him, but he had offered her little encouragement, thinking that she wouldn't want to live like he lived. At one place in his cross-examination plaintiff admitted that the reasons he wants a divorce from the de-

fendant all condense into the true and ultimate one that he just doesn't want to live with her. He said he had asked defendant to divorce him many times, but she had refused, finally saying "she didn't believe in divorce. * * *"

In rendering judgment for the plaintiff, the trial judge named no specific conduct on the part of the defendant which he regarded as extreme cruelty, but based his decision on that general ground, after indicating that, in his opinion, plaintiff and defendant couldn't get along and live together as husband and wife and would derive no possible benefit from a continuance of the marriage. In its decree, the court directed a specific division of property among the parties and denied defendant recovery of an attorney's fee.

In prosecuting this appeal, defendant contends that said judgment is clearly against the weight of the evidence, that it constitutes an abuse of discretion, and is contrary to law.

Our continued reference to the parties will be by their trial court designations.

We have not attempted, and it is unnecessary, to describe all of the various details in which the testimony on behalf of the defendant contradicts that of plaintiff, or how her conduct that plaintiff complains of was explained, excused or mitigated by circumstances she testified to. Suffice it to say that defendant's evidence tends to minimize the effect of the parties' differences and to indicate that their arguments have been infrequent or intermittent rather than continuous, and that no irreconcilable differences exist between them. Also, defendant evidenced a desire to "patch up" the marriage and a hope that they would be given that opportunity. "Extreme cruelty" as defined in Robertson v. Robertson, 73 Okla. 299, 176 P. 387, and applied in a long line of cases, including Peterson v. Peterson, 206 Okla. 68, 240 P. 2d 1075, is conduct on the part of either spouse which so grievously wounds the men-

tal feelings of the other, or so utterly destroys the peace of mind of the other as to seriously impair the bodily health, or such as utterly destroys the legitimate ends of matrimony. On the basis of the record we think there is no doubt that defendant's conduct fulfilled neither of the above-noted requirements. At most, the proof establishes no more than the parties' incompatibility in some respects. That is not a ground for divorce in this jurisdiction. In so holding, this court, in Hornor v. Hornor, 151 Okla. 292, 3 P. 2d 670, quoted in part from Barker v. Barker, 25 Okla. 48, 105 P. 347, 26 L.R.A. (N.S.) 909, as follows.

"' * * * To entitle a party to the remedy of divorcement on the ground of extreme cruelty, it is not enough that the grounds be the result of incompatibility of tastes or temperament or estrangement produced by differences of opinion and conduct growing out of the administration of household affairs, as these must be endured along with the other minor misfortunes of life, They are the things which under the law parties who marry take into consideration on entering matrimony, and divorce will not be granted on their account.' "

Defendant asserts that the wrongdoing established by the evidence was on the part of the plaintiff, that no fault or wrongdoing was proved against her, and that the court went beyond its statutory prerogative in giving the divorce to said wrongdoer. While in this jurisdiction a divorce may be granted in the court's discretion where the parties are in equal wrong (12 O.S.A. §1275; Panther v. Panther, 147 Okla. 131, 295 P. 219), that is not the situation here. There is no proof of any wrong committed by defendant sufficient to constitute a ground of divorce. It was clearly established that she had cause, justification and reasonable provocation for accusing plaintiff of infidelity and we do not think she went any further in trying to prevent her marriage from being broken up than was natural or justifiable. It appears that her efforts were successful in terminating one of

plaintiff's extra-marital "affairs" and nowhere does it appear that they had any other or ulterior motive, or that she deliberately sought to humiliate and insult plaintiff. In the fourth paragraph of the opinion in Beach v. Beach, 4 Okla. 359, 46 P. 514, this court gave full expression to its views and to the principles of law applying to this phase of the case and it is unnecessary to repeat them here.

In Morris v. Morris, 133 Okla. 176, 270 P. 833, this court referred to the following oft-repeated truisms which may appropriately be repeated here:

" * * * The remedy of absolute divorce is an extraordinary remedy for evils which are unavoidable and unendurable, and which cannot be relieved by any proper and reasonable exertion of the party seeking the aid of the courts. * * *

"It is not right to relieve a husband of his solemn duty to support his wife and children, to cherish his wife in sickness and in health, and permit him to cast her off at any time he becomes dissatisfied or wishes to transfer his affections to others, . . ."

" 'Marriage is a contract, and a relation which if possible should endure, and public policy requires that there be no straining of law or facts to end the contract and sever the relation. Time will heal many estrangements, and bring together those whom temporary feeling has alienated. And courts having ever in view the public good may often wisely use their discretion to give time and opportunity for reconciliation.' "

Of course, the law does not, nor can the courts, compel a husband and wife to live together. However, it is sound public policy to give the marriage contract all inducements to endurance, preservation and success. It is not the purpose of our state's divorce laws, and it should not be of our courts, to render the breaking of such a contract and its dissolution so easy that the parties thereto will not have the strongest of inducements or incentives, and all possible opportunities, for resolving their differences and preserving their marriage.

In recognition of the foregoing principles, the trial court should have denied plaintiff a divorce, and his refusal to do so, as prayed for by defendant, was not merely an abuse of discretion, but was contrary to law and to the evidence in this case.

With defendant's contention that plaintiff should pay the attorney's fee for which she has become obligated in defending this unwarranted action, we agree. Plaintiff points to the provisions for a property settlement contained in the decree appealed from, and especially to the fact that he has previously paid defendant the sum of $200 in temporary alimony and given her government bonds of a value of approximately $900, as an equitable adjustment of the parties' property rights sufficient to relieve him of any further obligations in the matter. We are not impressed by this argument. It can reasonably be inferred from the evidence that the defendant has been largely self-supporting the entire period of her marriage to plaintiff and without such financial assistance in discharging a husband's customary duties to his wife, plaintiff may never have accumulated the money and property he now has. The record of his liquid assets shows that he is financially able to pay this attorneys' fee without undue hardship, and we think that, under the circumstances, he should do so. In this connection, it should be kept in mind that since we have determined that the judgment should be reversed on the merits of the case, the property settlement contained in the decree will likewise be dissolved or set aside, and, except as to the financial detriment arising from the bringing of this action, the parties will in all respects be left as they were before it was commenced.

Accordingly, the judgment of the trial court is hereby reversed, with directions to said court to set it aside and enter a judgment in conformity with the views expressed herein.

HALLEY, C.J., JOHNSON, V.C.J., and WELCH, CORN, O'NEAL, and WILLIAMS, JJ., concur.