Kenneth L. PALMER, Plaintiff
and Respondent,

v.

Doris M. PALMER, Defendant
and Appellant.

No. 12215.

Supreme Court of South Dakota.

July 5, 1979.

Rehearing Denied Aug. 17, 1979.

Merle Johnson and Stuart L. Tiede of Woods, Fuller, Shultz & Smith, Sioux Falls, for plaintiff and respondent.

Carleton R. Hoy of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and appellant.

WOLLMAN, Chief Justice (on reassignment).

This is an appeal from a decree of divorce in favor of plaintiff husband that terminated a twenty-five year marriage between the parties. Defendant wife appeals, arguing that plaintiff did not establish grounds for granting the decree.[1] We reverse.

The parties were married on December 23, 1950. Three children were born to the marriage, all of whom are now adults.

In 1973, plaintiff admitted to his wife that he had been seeing his secretary but that the relationship "was all over now." Upon plaintiff's return from a trip to Reno, Nevada, in 1974, however, Mrs. Palmer discovered a receipt for a diamond ring that plaintiff had purchased for his secretary. Plaintiff moved out of the home in June of 1975, and the parties have been separated since that time. Plaintiff acknowledged at trial that he was still carrying on his relationship with the other woman.

Plaintiff alleged in his complaint that his wife had inflicted grievous mental suffering upon him. He testified that she was suspicious of his activities away from the home and that she had sought to confirm these suspicions by periodically checking on his whereabouts, by observing the mileage on his car, and by checking the contents of his pockets. Plaintiff's only evidence of the effect of his wife's behavior on him was his unsupported assertion that stresses in the marriage had caused him to suffer backaches.[2]

---

1. Defendant wife also appeals from the property settlement, support, and alimony judgment entered by the trial court. In view of our disposition of the divorce decree upon which the judgment is based, we do not discuss the merits of this contention.

2. That this marriage, like so many others, was not entirely free from discord is illustrated by plaintiff's testimony that in 1972 Mrs. Palmer had suggested counseling and that they had spoken to marriage counselors on two occasions. Mrs. Palmer testified that she and plaintiff had spoken with a marriage counselor on one occasion, apparently in the summer of 1972, but that plaintiff had refused to go back for further counseling.

SDCL 25–4–2 includes among the grounds for divorce extreme cruelty, which is defined by SDCL 25–4–4 as "the infliction of grievous bodily injury or grievous mental suffering upon the other, by one party to the marriage."

The evidence of extreme cruelty in this case does not even approach that found in *Pochop v. Pochop,* 89 S.D. 466, 233 N.W.2d 806 (1975), a decision that may well represent the outer limits of liberality in sustaining a finding of extreme cruelty and which should not be read as abrogating the requirement that there be record evidence of the grounds for divorce. We conclude that the trial court erred in determining that Mrs. Palmer had been guilty of extreme cruelty toward plaintiff. Suspicious she may have been, but plaintiff can hardly fault her for that, given his admissions and her discoveries.[3]

The judgment is reversed.

DUNN and MORGAN, JJ., concur.

HENDERSON and FOSHEIM, JJ., dissent.

HENDERSON, Justice (dissenting).

For purposes of clarity, plaintiff-respondent shall be referred to as "husband" and defendant-appellant shall be referred to as "wife."

SDCL 25–4–4 defines extreme cruelty as "the infliction of grievous bodily injury or grievous mental suffering upon the other, by one party to the marriage." It is one of the six grounds for divorce in the State of South Dakota. Husband sued for divorce.

The wife put husband on his proof; she did not sue for divorce. Essentially, she is waging a blocking action.

In my opinion the husband proved up grounds for divorce. The parties have been separated and living apart since 1975. He established that he had endured grievous mental suffering from the actions, words, conduct, and abuse of his wife. The wife could well be characterized, in this case, as a petulant fault finder, nag, and crank. She treated her husband with disdain, scorn, and very little respect. This conduct, over a period of many years of married life, long anteceded his gift of a diamond ring to his secretary. The trial court had the right to consider the entire series of acts constituting cruel and inhuman treatment and to conclude that all, taken together, would justify granting a divorce, even though no one act alone would. See *Habeck v. Habeck,* 51 S.D. 455, 214 N.W. 846 (1927).

Some of the facts that the husband testified to are:

1. Wife criticized his manner of dress.

2. Wife resented and vocalized discontentment of his hiring an eighteen-year-old girl to do a job his daughter had been discharging in his contracting business. His daughter had referred this young girl to him as she needed work. Wife was an insanely jealous woman who suspected that his conduct with this young girl was improper. (There was no testimony to establish that at any time he did anything improper). Husband had asked wife if she would substitute for their daughter as an office worker and she refused.

---

**3.** The transcript in this case is rather typical of contested divorce cases. The husband's extracurricular activities are suspect; the wife is a jealous nag and impossible to live with. The only clear, tangible, and undisputed evidence that sets this case apart from the typical case is the fact of plaintiff's purchase of a diamond ring for his girl friend. This he could not deny. When confronted with the proof of his misconduct, he responds by attempting to ascribe his actions to his wife's jealous conduct over the years. The fact remains that plaintiff did live with his wife for a quarter of a century, including a period in 1973 during which, according to plaintiff's testimony, the relationship between the parties was "very good," and now seeks a divorce based upon her jealous rages after her suspicions were confirmed by undisputed evidence. This opinion should not be read as a judicial revival of the statutorily repealed defense of recrimination. Rather, we view the evidence in the light of the full context of the relationship between the parties and not in the narrow light of isolated incidents, at least one of which dates back nearly a score of years.

3. Wife distrusted husband and indicated that he was deceiving her.

4. Husband was in the Reserves; wife vocally resented and was highly jealous of a certain noncommissioned female officer who worked under him. Wife caustically referred to this woman as his "Wacky-Dacky." (Nothing in the testimony or the record in any way reflects that he ever did anything improper with this woman).

5. Wife was uncommunicative and unsociable. A vivid example was that she would not speak to him for two days at a time.

6. Husband was a deacon in the Baptist Church. Wife did not like his going to these meetings. There was nothing to suggest that at any time, as a deacon of the Baptist Church, that he was in any way improperly consorting with women. Wife suspected it. She did not want him to leave the house and did not want him involved in any religious extra-curricular activities.

7. Husband became a director of a girls club in Sioux Falls and had to go to meetings. Wife resented this.

8. On weekends husband would play golf. He went to the Thursday night stags in Sioux Falls. Wife would go there, check his car and lurk in the parking lot. When he returned home, she would check his clothing, his hankies, and his money.

9. The parties were married in 1950. In 1959, wife cut husband with a knife because he had said hello to a babysitter from next door that had come over to a lawn party. (This demonstrates the years of heckling, distrust, and cruelty).

10. Wife repeatedly checked on husband at the office and would later hang up the phone without identifying herself.

11. When husband would try to show wife affection by putting his arms or hands on her, she would tell him "take your hands off of me!"

12. Generally speaking, for approximately five to six years, wife was openly hostile to husband. During these years, she repeatedly told him that she would divorce him as soon as their daughter, Diane, graduated from high school.

13. Wife many times asked husband to move out of the house.

14. Wife stood in front of the shower and would not let husband get into the shower because she thought he did not need one.

15. Husband had hepatitis and could not work. The doctor gave him advice. Upon returning home, he was to generally get into work on an easy rehabilitative program, i. e., so many hours per day; then, increase his daily workload as he improved. Husband tried to go to work, was tired, and came home. When wife saw him, she censured him in obscene language, belittling his early return home.

16. Husband was affected mentally and physically by wife's conduct. He testified he had a pain in his back for five or six years. When he moved from the family home he testified the pain went away; he testified he was tense and suffered mental anguish due to the discord in the marriage.

Wife testified that all the problems in the marriage started in 1973, after he hired the new girl (the secretary who received the diamond ring). Wife testified, which appears patently erroneous, that there had been no definite problems in the marriage of any sort up until the time that husband hired the new girl. However, in 1972 they had sought out marriage counseling concerning the problems in the marriage, which were obviously unrelated to the gift of the diamond ring to the secretary.

The findings of the trial court in part are as follows:

## IV

That the defendant has treated the plaintiff with extreme cruelty and has inflicted grievous mental suffering upon the plaintiff by engaging in activities which have made it impossible for plaintiff to continue in the marital relation; that said conduct on the part of the defendant has caused the plaintiff to suffer both physically and mentally affecting his physical and mental health; that a cause of action thereby exists in favor of the plaintiff and against the defendant.

## V

That the extreme cruelty of the defendant is reflected in the fact that for the past several years the defendant on repeated occasions refused to communicate in any manner with the plaintiff; that defendant on repeated occasions advised the plaintiff that she was going to divorce him as soon as the children were of age; that she asked the plaintiff to move out of the house on several occasions and the parties have now been separated and living apart since June of 1975. Further that defendant for the past several years has been distrustful of plaintiff, periodically checking his clothing and billfold, calling the office to find out if plaintiff was present and then hanging up, checking on the plaintiff while playing golf, objected to attendance at business, Army Reserve and other meetings; that defendant objected to plaintiff's wearing dress clothing; that the parties obtained counseling on occasions from two different professional counselors but that the difference could not be reconciled.

It is therefore obvious to me that the lower court's findings of fact are in accord with the testimony. SDCL 15–6–52(a) provides in part: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." *Spaulding v. Spaulding,* 278 N.W.2d 639 (S.D.1979); *Isaak v. Isaak,* 278 N.W.2d 445 (S.D.1979); *Holforty v. Holforty,* 272 N.W.2d 810 (S.D.1978); *Masek v. Masek,* 89 S.D. 62, 228 N.W.2d 334 (1975); *Pochop v. Pochop,* 89 S.D. 466, 233 N.W.2d 806 (1975). The trial court believed the husband and was unimpressed with the wife's testimony. The majority opinion is apparently impressed with the wife's testimony regarding the secretary-diamond ring scenario. I therefore consider the decision of the majority as a sub silentio departure from these cases. Additionally, the defense of recrimination has been statutorily repealed. If, indeed, husband gave the secretary a diamond ring, this should not estop husband from obtaining a divorce from wife. It was her decision to not sue for a divorce.

In *Pochop v. Pochop,* supra, this court essentially held that there can be no set definition of extreme cruelty applicable to every marital setting. We held that the personalities of the parties involved, in addition to a number of other factors, must be considered in determining what should fall within the parameters of a workable marital relationship and what will not. We should now view this case in the light of that holding. I consider the facts herein, as outlined above, to be far more grievous than the grounds sustained in *Pochop.*

We cannot set aside the trial court's findings of fact unless they are clearly erroneous and we are, after a review of all the evidence, left with a definite and firm conviction that a mistake has been made. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); *Cunningham v. Yankton Clinic, P. A.,* 262 N.W.2d 508 (S.D.1978); *Schutterle v. Schutterle,* 260 N.W.2d 341 (S.D.1977); *The Collegian v. Hileman,* 88 S.D. 601, 226 N.W.2d 163 (1975); *In re Estate of Hobelsberger,* 85 S.D. 282, 181 N.W.2d 455 (1970). The language in these cases was approved by this court as recent as April 26, 1979, in *Matter of V.D.D.,* 278 N.W.2d 194 (S.D. 1979). The majority opinion ignores by silence this rule of law and precedent.

Under the terms of our statute, what is grievous mental suffering? Did the husband endure it? Let us examine our sister states.

*North Dakota* (extreme cruelty definition identical):

A decree of divorce may be granted in this state by reason of the infliction of grievous mental suffering although such suffering produced no bodily injury. *Raszler v. Raszler,* 64 N.W.2d 358 (N.D.1954); *Rindlaub v. Rindlaub,* 19 N.D. 352, 125 N.W. 479 (1910); *DeRoche v. DeRoche,* 12 N.D. 17, 94 N.W. 767 (1903); *Mahnken v. Mahnken,* 9 N.D. 188, 82 N.W. 870 (1900).

Conduct on the part of either spouse which is unjustifiable, and which grievously wounded the mental feelings of the other so as to impair the other's bodily health, or to cause destruction of the ends of marriage, constitutes extreme cruelty. *Fleck v. Fleck,* 79 N.D. 561, 58 N.W.2d 765 (1953); *Thompson v. Thompson,* 32 N.D. 530, 156 N.W. 492 (1916).

*Colorado:*

" 'Mental cruelty may be inflicted by the use of words or acts or conduct which constitutes quarreling or fault finding and which are such as to affect the health, the well-being *or* the peace of mind of either of the parties.' (Emphasis added.)" *Cochran v. Cochran,* 164 Colo. 99, 101, 432 P.2d 752, 753 (1967), quoting the trial court's definition of mental cruelty.

*California* (statute * identical except for one word; it states "wrongful infliction" rather than "infliction"):

Under this section, defining "extreme cruelty" justifying a divorce as the wrongful infliction of grievous bodily injury or grievous mental suffering, the wrongful infliction of grievous mental suffering is "extreme cruelty," though no injury to the health of the spouse injured is caused thereby, and a single act of cruelty may be of such a nature, though it consists solely of unfounded charges, as not only to inflict the most grievous mental suffering, but also to render impossible the subsequent living together of husband and wife, justifying a divorce. *Anderson v. Anderson,* 68 Cal. App. 218, 228 P. 715 (1924); *MacDonald v. MacDonald,* 155 Cal. 665, 102 P. 927 (1909).

*Oklahoma:*

Approving the language of its previous holdings, the Oklahoma Supreme Court stated:

"Extreme cruelty" as defined in *Robertson v. Robertson,* 73 Okl. 299, 176 P. 387, and applied in a long line of cases including *Peterson v. Peterson,* 206 Okl. 68, 240 P.2d 1075, is conduct on the part of either spouse which so grievously wounds the mental feelings of the other, or so utterly destroys the peace of mind of the other, as to seriously impair the bodily health, or such as utterly destroys the legitimate ends of matrimony.

*Vincent v. Vincent,* 208 Okl. 470, 473, 257 P.2d 512, 515 (1953).

*Kansas:*

In *Saint v. Saint,* 196 Kan. 330, 411 P.2d 683 (1966), the wife was repeatedly angered at her husband, would pout and sulk and retire to her bedroom or the basement, and for days at a time would refuse to speak or communicate. The Kansas Supreme Court held this constituted extreme cruelty. Approving previous decisions, it expressed:

"Extreme cruelty as contemplated by the divorce statute is no longer regarded as being limited to acts of physical violence. The modern and better considered cases have repudiated the ancient doctrine requiring physical violence as too low and sensual a view of the marriage relation. It is now generally held, and in this state it has long been the rule, that any unjustifiable and long practiced course of conduct by one spouse towards the other which utterly destroys the legitimate ends and objects of matrimony constitutes extreme cruelty though no physical or personal violence may be inflicted, or threatened."

*Saint v. Saint,* 196 Kan. at 331, 411 P.2d at 686, quoting from *Hayn v. Hayn,* 162 Kan. 189, 193, 175 P.2d 127, 130 (1946).

*Wisconsin:*

Refusal of a spouse to speak to the other for a long period of time has been held, in

---

* California has now repealed this statute.

connection with other circumstances, to constitute cruelty. *Hiecke v. Hiecke,* 163 Wis. 171, 157 N.W. 747 (1916); *Reinhard v. Reinhard,* 96 Wis. 555, 71 N.W. 803 (1897).

I would affirm the trial court in granting the husband a divorce. The wife perpetrated years of intentional incivility, open hostility and exhibited a manifestation of settled dislike toward her husband. This conduct lashes love, the cornerstone of marriage.

The majority opinion, due to its decision in reversing the trial court on the divorce issue, did not address the other two remaining issues: The supposed inequitability of the property settlement and the urged unconstitutionality of SDCL 25–4–41. I likewise feel compelled to a non-review of these issues as the constitutional question was first urged at appellate level and the urged inequitable division of property could well, in the future, surface before this court.

I am hereby authorized to state that Justice Fosheim joins in this dissent.