James F. WATT, Jr., Plaintiff
and Appellant,

v.

Barbara E. WATT, Defendant
and Appellee.

No. 13209.

Supreme Court of South Dakota.

Argued March 19, 1981.

Decided Nov. 18, 1981.

Clyde R. Calhoon of Calhoon & Kratochvil, Brookings, for plaintiff and appellant.

M. E. McCann of McCann, Martin & Mickelson, P. C., Brookings, for defendant and appellee.

WOLLMAN, Chief Justice.

Appellant appeals from a judgment and decree of divorce awarded to appellee. The decree awarded custody of the parties' three minor children to appellee, granted appellant visitation rights, directed appellant to pay child support, and awarded appellee one-half of the net equity of the assets held by the parties during their marriage, to be paid by appellant in ten annual installments at eight percent interest per year, with interest commencing from the date of the trial. The trial court also imposed a lien upon the real property awarded to appellant for any unpaid portions of the property division and any unpaid child support. We affirm in part, reverse in part, and remand.

The parties were married in December 1969. Neither party brought property into the marriage. At the time of their marriage appellant was attending vocational school studying mechanics; appellee was working as a waitress. After completing his training appellant was employed until 1974, when he purchased a farm and took up farming as a full-time pursuit. Appellee was also employed at various times during the marriage.

The circumstances contributing to the breakdown of the marriage were compounded by the family's poor economic situation. The house on the farm was in a poor state of repair when appellant moved his family there and, for the most part, it remained that way throughout the marriage.

Appellee left home for short periods on two occasions during the marriage, and in November 1979 she left permanently, moving to North Dakota to be near her parents. Appellee gave as her reasons for leaving her dissatisfaction with the marginal economic situation the family was forced to maintain due to appellant's occupation, together with her perceived lack of hope that conditions would improve. She is currently employed on a full-time basis.

Appellant alleged in his complaint for divorce that appellee's conduct had caused him mental suffering and constituted extreme cruelty. Appellee counterclaimed and was awarded the divorce on grounds of extreme mental cruelty. Under the trial court's pretrial order, appellant retains custody of the children during the pendency of this action.

The first issue is whether the trial court erred in refusing to grant appellant a divorce on the basis of appellee's admission during trial that she had committed adultery on one occasion after she left the family home for good. Adultery constitutes a ground for divorce, SDCL 25–4–2(1), and in the light of appellee's admitted adulterous

act the trial court should have made a finding of adultery and should have granted appellant a divorce on this ground. As we recently held in *Sioux Valley Hospital Ass'n v. Jones County*, 309 N.W.2d 835 (S.D.1981),

> The circuit court has a duty to make findings of fact upon every issue raised by the pleadings and its failure to do so is reversible error if a substantial right has been prejudiced. *Grady v. Commers Interiors, Inc.*, 268 N.W.2d 823 (S.D.1978); *Stugelmayer v. Ulmer*, 260 N.W.2d 236 (S.D.1977). To determine whether a substantial right has been prejudiced, this court must decide if sufficient evidence exists in the record on which a finding in favor of the party alleging reversible error can be made.

Although appellant did not allege adultery in his complaint, he did submit findings and conclusions that adequately presented the matter of his wife's adultery to the trial court. SDCL 15–6–52(a) states:

> Any action or decision of the court in making or modifying findings of fact or conclusions of law shall be deemed excepted to, but the failure of the court to make a finding or conclusion on a material issue shall not be deemed excepted to unless such finding or conclusion has been proposed to or requested from the court.

Since appellant raised the issue of his wife's adultery, the court erred by not also granting appellant a divorce on this ground.

We have considered appellant's contention that the trial court erred in granting appellee a divorce on her counterclaim and conclude that the evidence was sufficient to justify the trial court's action in the light of the principles set forth in *Pochop v. Pochop*, 89 S.D. 466, 233 N.W.2d 806 (1975). Cf. *Palmer v. Palmer*, 281 N.W.2d 263 (S.D. 1979). Accordingly, we hold that the evidence supports the grant of a decree of divorce to both parties and that it was error to grant the divorce to appellee alone.

We next consider the award of custody of the three children to appellee. As we said in *Isaak v. Isaak*, 278 N.W.2d 445 (S.D. 1979), "The trial court has broad discretion in awarding custody of minor children, and

we will not interfere with the exercise of such discretion unless the record presents a clear case of abuse of discretion." 278 N.W.2d at 446. See also *Engels v. Engels*, 297 N.W.2d 489 (S.D.1980); *Haskell v. Haskell*, 279 N.W.2d 903 (S.D.1979); *Spaulding v. Spaulding*, 278 N.W.2d 639 (S.D.1979).

In deciding the issue of child custody the trial court must give paramount consideration to the best interests of the children. SDCL 30–27–19; *Isaak v. Isaak, supra.* Appellant points out that during the time he has had temporary custody of the children he, with the help of his parents, has provided a good home environment, an arrangement that would continue if he were awarded permanent custody. Appellant argues that appellee is unfit to have custody of the children because in his opinion she suffered from emotional problems during the marriage. As examples of appellee's emotional problems, appellant mentions her temper outbursts, her perceived inability to simultaneously keep a tidy house and mind three young boys, her temporary absences from the home, her ultimate flight to North Dakota, and the single adulterous act committed after she left home.

Appellee testified that since her husband's occupation would often keep him out until late at night and allowed him to be home only on Sundays, she was the parent who cared for the children. She did the cooking, cleaning, gardening, canning, and freezing. She sewed clothes for the children, washed the clothes, and attended to the children's daily needs. Appellee explained that her temper outbursts and absences from the home provided necessary releases from the tension and emotional pressures resulting from the isolation, economic oppression, and frustrations she experienced after moving to the dilapidated farm home.

In reviewing a trial court's findings, we must give due regard to the opportunity of the trial court to judge the credibility of the witnesses and to weigh their testimony. The court's findings will not be set aside unless they are clearly erroneous.

SDCL 15–6–52(a); *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970). Moreover, in reviewing findings of fact, we accept that version of the evidence, together with any reasonable inferences that may be drawn therefrom, that is favorable to the trial court's determination. *Isaak v. Isaak*, supra; *Schutterle v. Schutterle*, 260 N.W.2d 341 (S.D.1977); *Larson v. Syverson*, 84 S.D. 31, 166 N.W.2d 424 (1969); *Beatty v. Depue*, 78 S.D. 395, 103 N.W.2d 187 (1960). The trial court found that during the marriage appellee undertook the bulk of the child care responsibilities. It found that during the marriage appellee was a fit and proper person to have custody of the children, and it found that it would be in the best interests of the children that they be permanently placed in appellee's custody.

■ After a review of the record we cannot say that the trial court clearly abused its discretion in awarding custody to appellee. The trial court could reasonably have inferred from the evidence that appellee's actions were explainable, given the testimony that she felt overwhelmed by the cycle of poverty into which the family seemed locked and by the apparent inability or unwillingness of appellant to take even the most rudimentary action to improve the living conditions in and around their home.* Further, the trial court must have concluded that appellant did not meet his burden of showing that appellee's conduct had a harmful effect on the children. *Kester v. Kester*, 257 N.W.2d 731 (S.D.1977); *Isaak v. Isaak*, supra.

■ The next issue is whether the award to appellee of one-half of the net equity of the assets of the parties was equitable. In order to make an equitable property division, the trial court must first consider the factors set out in *Price v. Price*, 278 N.W.2d 455 (S.D.1979):

> the duration of the marriage, value of the property, the ages of the parties, the state of health of the parties, the competency to earn a living, the contribution of each party to the accumulation of the property, and the income-producing capacity of the parties' assets.

278 N.W.2d at 457.

Appellant argues that the property settlement is inequitable because the trial court failed to consider that the income produced by the parties' assets is minimal. The major part of these assets consists of approximately 160 acres of farm land. There is no reliable evidence to indicate the amount of income that this real estate generates. The evidence of appellant's total income is unclear, although all parties agree that the income is very small. Nevertheless, the trial court is not precluded from considering the income-producing capacity of the property. *Stenberg v. Stenberg*, 90 S.D. 229, 240 N.W.2d 100 (1976).

Moreover, appellant does not address the several other factors the trial court must consider in making an equitable distribution. In this case the parties had been married nearly eleven years. They were each thirty years old and in good health at the time of the divorce. Each has a high school education, and appellant has specialized training in mechanics. The evidence indicates that both parties worked to accumulate the property, although their net worth is primarily the result of the appreciation of the farm land.

---

* It appears that appellant was notoriously slow in making repairs. For instance, appellant opened the septic tank in 1976 to repair it, but it had not been closed or repaired by the time of trial. The plumbing in the house worked only sporadically. When it was not working appellant would place a large garbage can in the basement to catch the family's waste water. About a year before trial, appellant tore apart a spare room in the house with the intention of remodeling it into a recreation room, but he had made no further progress. A wringer washing machine stood on the porch for a number of years. Appellant repaired it at one time but neglected to replace a gasket. Consequently it constantly leaked oil. In response to appellee's request that he complete the repair job so that she would not have to do the laundry by hand, appellant told her that he would get around to it and that in the meantime she should just add more oil. Appellee was without transportation for the most part because appellant placed her car on blocks after removing the rear wheels for use on his car.

We will not modify or set aside an award of alimony or a division of property unless it clearly appears that the trial court abused its discretion. *Stenberg v. Stenberg*, supra. After reviewing the evidence we cannot say that the trial court abused its discretion by dividing the property equally. There is nothing to indicate that the trial court did not consider all of the factors listed in *Price*, supra, in reaching its decision.

The next issue is whether the lien on appellant's real property imposed by the trial court for any unpaid child support or property settlement installments was unduly burdensome. The imposition of a lien upon the real estate was within the trial court's power and was reasonable under the circumstances of this case. We cannot say that the trial court abused its discretion by imposing this security device upon the property. *Kerr v. Kerr*, 74 S.D. 454, 54 N.W.2d 357 (1952); *Alwin v. Alwin*, 74 S.D. 111, 49 N.W.2d 296 (1951).

Another issue is whether the interest on any part of the unpaid property settlement and child support payments should have commenced from the date of trial or from the date of the entry of the judgment and decree of divorce. Our holding in *Lien v. Lien*, 278 N.W.2d 436 (S.D. 1979), disposes of this matter in favor of appellant, for there we stated that "[t]he division of property in a divorce action is designed to settle with finality the property rights of the parties as of the time of entry of judgment. *Holt v. Holt* (1970), 84 S.D. 671, 176 N.W.2d 51. Each party is entitled to their respective property as of that date." 278 N.W.2d at 444. It was therefore error to impose prejudgment interest.

We have considered appellee's motion for attorney fees on appeal and have concluded that the motion should be denied.

We affirm the custody, property settlement, and lien provisions of the trial court's judgment. To the extent that it granted a divorce to appellee only and granted an award of prejudgment interest, the judgment is reversed and the case is remanded to the circuit court for entry of judgment consistent with the views set forth in this opinion.

MORGAN and FOSHEIM, JJ., concur.

DUNN and HENDERSON, JJ., concur in part and dissent in part.

DUNN, Justice (concurring in part and dissenting in part).

I would reverse the decision of the trial court granting custody of the minor children to appellee.

The trial court has broad discretionary powers in determining the custody of minor children and this court will not interfere with that discretion unless there is a clear case of abuse presented by the record. *O'Connor v. O'Connor*, 307 N.W.2d 132 (S.D. 1981); *Engels v. Engels*, 297 N.W.2d 489 (S.D.1980); *Isaak v. Isaak*, 278 N.W.2d 445 (S.D.1979). "This exercise of judicial discretion, however, must have sound and substantial basis in the testimony." *Aulner v. Aulner*, 296 N.W.2d 533, 535 (S.D.1980); *Haskell v. Haskell*, 279 N.W.2d 903 (S.D. 1979). The best interests of the children relative to their temporal, mental and moral welfare are the primary criterion to be considered by the court in custody determinations. *Haskell v. Haskell*, supra; *Yager v. Yager*, 83 S.D. 315, 159 N.W.2d 125 (1968). I do not feel that the record supports the trial court's finding that the best interests of the child will be served by granting custody to appellee.

The evidence introduced at trial indicates that appellant was willing and competent to care for the parties' children. Appellant has cared for the needs of the children since appellee abandoned the family in November of 1979. He has fed, bathed, and dressed the children; met with their teachers at school; taken them to church and arranged for their religious education; and has handled the necessary household chores of cooking, washing and cleaning. Appellant has a stable job of farming and has made arrangements for the care of his children while he is working. The record does indicate, however, that he was slow to make repairs.

With regard to appellee, on the other hand, the record indicates that she left the

home for short periods on two occasions during the marriage, and that she left permanently on November 20, 1979. After this final departure, she had no contact with her family until shortly before the hearing on the Order to Show Cause on December 28, 1979. Meanwhile, she had moved to North Dakota. Prior to the divorce hearing on March 27, 1980, appellee exercised her visitation rights only once. Evidence was also introduced at trial indicating that appellee did not properly bathe or clothe her children; that her housekeeping duties were often neglected as evidenced by dirty dishes and full garbage bags sitting around the house; and that she was subject to attacks of temper and rage. Appellee's emotional stability was questioned at the trial through introduction of evidence regarding her leaving home on three occasions and of attempting to stab herself with a knife. After appellee committed perjury at the divorce hearing, she finally admitted having had sexual intercourse with another man after leaving her family in November, 1979. Appellee did not indicate at trial the plans she has made for the education of her children or for their care while she was working if given custody of the children.

This evident lack of stability on the part of appellee should have been given greater consideration by the trial court. There will be no father or grandparents in North Dakota to pick up the pieces when appellee leaves in frustration as she has in the past; and she will have frustrations even greater than those caused by a broken down washer in trying to raise three boys alone! The stability for the boys is on the farm with their father and their grandparents nearby ready and willing to lend a hand. In my opinion, it was an abuse of discretion for the trial court to move these boys out of this stable farm home, and place them in a completely unknown environment with appellee.

HENDERSON, Justice (concurring in part, dissenting in part).

DIVORCE

Appellant-husband should have been granted a divorce from appellee-wife on the grounds of adultery and extreme cruelty; to this extent, I join the majority opinion. The trial court erred in granting the divorce solely to the wife in view of: (a) her admitted adultery and (b) the abandonment of her husband and children, thereby creating a cause of action proving extreme cruelty through the infliction of grievous mental suffering.

The wife should not have been granted a divorce under her counterclaim and I would reverse the decree in this regard. As I view the record, her grounds for divorce were based on her testimony that: (1) her husband kept the family checkbook, (2) he shopped with her, (3) he was slow in completing his daily tasks and repairing things, (4) their home was substandard and her appliances needed repairs, (5) he provided no money for entertainment, (6) she had no telephone or automobile, and (7) he was away from home all day working with his father, which deprived her of her husband's companionship. One may single out these facts, or combine them, and extreme cruelty is not demonstrated. Finding of Fact VIII entered by the trial court states "[t]hat the [wife] has suffered extreme embarrassment, humiliation and nervous tension as a result of the [husband's] conduct toward the [wife]." It was on these "facts" that extreme cruelty was predicated.

The wife relies on *Pochop v. Pochop*, 89 S.D. 466, 233 N.W.2d 806 (1975), wherein this Court conceptually discussed extreme cruelty. The facts which constituted extreme cruelty, as found against the husband in *Pochop*, are simply not comparable to the facts I have related above. Acts of an extreme and personal nature were found in *Pochop*; there, examples of grievous mental suffering included (1) repeated and heated outbursts of temper, (2) the suggestion that one of the couple's children be given up for adoption, (3) excessive sexual demands, and (4) religious conflicts between the spouses. In the now well-known case of *Palmer v. Palmer* (in which I vigorously dissented), 281 N.W.2d 263, 264 (S.D.1979),

this Court referred to the *Pochop* decision as representing "the outer limits of liberality in sustaining a finding of extreme cruelty[.]" If the facts in *Pochop* strained the outer limits of liberality, these facts certainly exceed it.

If, indeed, the wife has established poverty (as the majority opinion's footnote so suggests), economic hardship is not one of the grounds for divorce in South Dakota. *See* SDCL 25–4–2. Many marriages are filled with economic hardship. Pertinent, I believe, is the fact that the trial court entered not one finding of fact to indicate that the husband financially mistreated his wife or family or economically deprived them. Yet, it is the poverty syndrome which prompts a divorce decree in her favor. Moreover, no welfare or public assistance was ever received by the parties or their children. There is absolutely no showing of physical mistreatment by the husband toward his wife or family.

A divorce may be granted, however, under SDCL 25–4–2(4) for "willful neglect." SDCL 25–4–15 defines willful neglect as: "[T]he neglect of the husband to provide for his wife the common necessaries of life, he having ability to do so; or it is the failure to do so by reason of idleness, profligacy, or dissipation." SDCL 25–4–17 requires that willful neglect be continuous for one year before it constitutes legal grounds for divorce. Here, the wife did not plead, prove, or brief this "willful neglect" factor. It was not framed in pleadings for the trial court to consider and it is similarly not before us on appeal. Hence, we should not ground an affirmance of the divorce unto the wife as it is not supported in law. What happens, pray tell, to the art of advocacy when an appellate court will permit the elements of the cause of action pled to be proven by the elements of a totally different cause of action which was not pled?

CHILDREN

I also cannot join the majority opinion in affirming the award of the three children unto the wife in view of these aggregate facts:

(a) Her instability and emotional immaturity. ("God damn it, I wish I didn't have you children.") (Grabbing a knife and threatening to kill herself in front of the children.) (Depression, tranquilizers, hospitalization.)

(b) Her abandonment of the three children and the family home. (This bespeaks her intention more loudly than her present entreaty to have custody of the children.) Her reasons for leaving her husband were: "I wanted to think. I didn't want any involvement." Now—after having left South Dakota with her lover to "sit and think"—she wants custody of the children.

(c) Her perjury at the trial. (This reflects her present character.)

(d) My conviction that the "best interests of the children" would be better served by keeping them in a stable environment—which they now have—and by not placing them with their mother who has absolutely no concrete plans for them. There are no findings of fact as to what the wife will temporally, mentally and morally do for the children. To have uprooted these children from a known environment and familial setting and to place them in an unknown situation was wrong, in my opinion.

Thus, I join the concurrence in part and dissent in part of Justice Dunn on the issue of custody.

PROPERTY SETTLEMENT

The trial court's property award appears equitable, is not an abuse of discretion, and I therefore agree with the majority opinion and its cited authorities in this regard. Obviously, if the wife does not obtain custody of the children, she should not receive a lien for future child support. I also join the majority opinion pertaining to the award of prejudgment interest thus reversing the trial court on this aspect of the property award. Our law is settled in this area. Furthermore, if the wife has a judgment which awards her a portion of the land, and the legal description thereof is set forth and

the judgment is filed with the register of deeds, she has a lien of record on the land.

ATTORNEY FEES

Lastly, the wife should be allowed $1,500 in attorney fees for this appeal. A motion for attorney fees on appeal was filed with this Court on March 9, 1981. Said motion was made pursuant to SDCL 15–17–7. These fees could be paid in installments in the same manner, if necessary, as the net equity installment payments which are now being paid into the trust account of the wife's attorneys. She has little money, if any, to pay attorney fees. Under my theory, the wife prevails on the property settlement award. She was placed in the role of appellee by an appeal taken by her husband and, therefore, is not before this Court of her own choosing. Her counsel is entitled to be reimbursed for his effort. The brief on her behalf was thorough and painstaking. Therefore, I cannot agree with the majority opinion's denial of attorney fees for the wife.