**Leeann HASKELL, Plaintiff and Appellant,**

v.

**Curtis D. HASKELL, Defendant and Respondent.**

No. 12577.

Supreme Court of South Dakota.

Argued April 24, 1979.

Decided June 14, 1979.

Michael T. Hogan of Maloney, Kolker, Fritz, Hogan & Johnson, Aberdeen, for plaintiff and appellant.

Carlyle E. Richards, P. C., Aberdeen, for defendant and respondent.

FOSHEIM, Justice.

Plaintiff-appellant Leeann Haskell (mother) brought this action for divorce against defendant-respondent Curtis D. Haskell (father). Her complaint also seeks custody of the parties' four-year-old daughter, together with child support. The father counterclaimed for divorce and custody. The trial court granted a divorce, cus-

tody and child support to the father. We affirm the custody determination, but reverse the child support award.

The parties were married in Conde on January 25, 1973. Their daughter was born that year. After the marriage, the father worked on his father's farm. The mother was not employed. Their home was several miles from Conde.

During the latter part of 1975, the mother began keeping company with a man with whom she admitted having had a sexual relationship, and that she occasionally drank beer in two bars while he was present. The father testified that the mother went out on drinking trips three to four times per week during this period, returning home as late as 3:00 or 4:00 a. m., and that she often took the daughter with her on these occasions. He also testified that upon returning, the mother regularly remained in bed and gave no care or attention to the daughter until after noon. On one occasion in 1975, when she had the daughter with her, appellant pulled to the side of the road to sober up before going home because she realized the defendant would be angry if she returned while intoxicated. This occurred at 2:30 a. m.

The parties moved to Aberdeen in March, 1977. The mother went to work at the Aberdeen 3–M plant, where she worked on various shifts from 8:00 a. m. to 4:00 p. m., midnight to 8:00 a. m., or from 4:00 p. m. to midnight. She apparently will continue working one of these rotating shifts. Because of these irregular shifts, the mother had a problem supervising the child. The evidence shows that after moving to Aberdeen the mother resumed her habit of drinking until 2:30 or 3:30 a. m. three or four nights per week. When the father came home from work at noon, he often found his wife in bed and his daughter unsupervised. He would then prepare a meal for his daughter and himself. In late September, 1977, at about 2:30 a. m. the mother, accompanied by her daughter, again drove an automobile after she had been drinking.

The mother also began keeping company with a male co-employee who visited appellant at her home twice before the parties separated. The daughter was at home during these visits. After the separation, the mother and her male companion commenced a sexual relationship while the parties were still married. According to the mother, this relationship occurred for the most part during the absence of the daughter. She admitted, however, that her paramour occasionally visited her while her daughter was sleeping, and that they had hugged and kissed in front of her daughter.

The father testified that he had also driven, with his wife and daughter in the car, after he had been drinking. He admitted to having had other women in his apartment, although he said they were only friends and relatives, and he maintained that he had never had a relationship with another woman while married to his wife. There is evidence that both parties used foul and abusive language in front of the child. There is conflicting evidence whether the father physically abused the mother in the presence of the child.

The father testified that if granted custody, he will move back to his parents' farm and work for his father. Respondent and the daughter would have a separate apartment. She would have her own bedroom. Mrs. Joyce Haskell, respondent's mother, assured the court that she and her two teenage daughters were willing to help in the care of the child.

Before trial, counsel for the mother (not her counsel on appeal) requested that an investigation be undertaken by the Department of Social Services. Counsel stated: "I think it would be good for everybody. . . . " The mother did not request a copy of the investigation report. In addition, her counsel on appeal stipulated to settlement of the record, minus this report. The findings of fact and conclusions of law do not refer to the report. It is, however, acknowledged in the trial court's memorandum opinion. It thus appears the trial court received and reviewed the report.

The issues on appeal are whether the trial court abused its discretion in its custody determination and child support award and

whether the above-mentioned report was improperly withheld from the mother.

■ The trial court has broad discretion in awarding custody of children, and its determination will not be set aside on appeal unless its appears the court has abused its discretion. *Spaulding v. Spaulding*, 278 N.W.2d 639 (S.D.1979); *Holforty v. Holforty*, 272 N.W.2d 810 (S.D.1978). It is, however, a judicial discretion, not an uncontrolled one, and its exercise must have sound and substantial basis in the testimony. *Masek v. Masek*, 89 S.D. 62, 228 N.W.2d 334 (1975). The primary criterion in custody determinations is the best interests of the child relative to its temporal, mental, and moral welfare. *Yager v. Yager*, 83 S.D. 315, 159 N.W.2d 125 (1968); *Wiesner v. Wiesner*, 80 S.D. 114, 119 N.W.2d 920 (1963); *Howells v. Howells*, 79 S.D. 480, 113 N.W.2d 533 (1962). Although as appellant contends SDCL 30–27–19 gives her a "statutory preferential right" to custody, *Stearns v. Stearns*, 80 S.D. 443, 446, 126 N.W.2d 124, 126 (1964), this preference is always subservient to the best interests of the child, and the tender years provision operates only when "other things [are] equal." SDCL 30–27–19(2). Marital misconduct by the mother, which has not been shown to have had a demonstrable effect on the child, is insufficient cause to deprive her of custody. *Kester v. Kester*, 257 N.W.2d 731 (S.D.1977); *Hershey v. Hershey*, 85 S.D. 85, 177 N.W.2d 267 (1970); *Wiesner v. Wiesner*, supra. The effect of marital misconduct is self-evident, however, if it is committed in the presence of children old enough to recognize the bad example. *Spaulding v. Spaulding*, supra. In view of the child's age when appellant's improprieties occurred, it is doubtful if her daughter was detrimentally affected by her marital misconduct. That age factor, however, does not mitigate the mother's acts of irresponsibility and child neglect, particularly in driving a car with the child as a passenger at 2:30 and 3:00 a. m. following prolonged drinking sessions. To her credit she did on one occasion stop to sober up before continuing home. She did not do that, however, out of concern for the safety of the child but rather so her husband would not see her intoxicated.

■ The trial court found that the mother engaged in sexual relationships with two men other than her husband; that the mother often drank excessive amounts of beer, became intoxicated, and on at least one occasion drove with her daughter in the car while intoxicated; and that the mother often stayed in bed in the morning leaving the daughter unattended. The mother challenges the finding that her custody was detrimental as unsupported by the record. She also contends that the other findings are insufficient to support an award of custody to the father.

We conclude that the evidence supports the trial court's award of custody. Aside from the marital misconduct, the detrimental effect of which is doubtful, there is convincing evidence that the best interests of the child would be served by awarding custody to the father. The evidence indicated the mother adopted a lifestyle of frequently drinking to excess, staying out late nights, and failing to properly supervise and care for the child. The trial court concluded that her mode of life was not conducive to the best interests of the child. Awarding custody to the father was not an abuse of discretion.

■ The record does not, in our opinion, justify the award of fifty dollars per month child support from the mother to the father. The mother, as well as the father, has a duty to support their children. SDCL 25–7–7.* The evidence, however, does not indicate, and the court did not find, that the support which the father is able to give is inadequate. The father did not seek child support in his counterclaim, even though he did ask for custody. While every nondefault final judgment shall grant the relief to which the prevailing party is entitled, even though not demanded, SDCL 15–6–54(c), *Slettebak v. Slettebak*, 48 S.D. 51, 201

---

\* SDCL 25 7 7:

The parent entitled to the custody of a child must give it support and education suitable to his circumstances. If the support and education which the father of a legitimate child is able to give are inadequate, the mother must assist him to the extent of her ability.

N.W. 716 (1924), the father's failure to ask for child support indicates that he considered it unnecessary and not justified by the evidence. *American Property Services v. Barringer*, 256 N.W.2d 887 (S.D.1977). We agree.

■ The mother's final contention is that the trial court committed reversible error by not giving her access to the report by the Department of Social Services, and an opportunity to cross-examine the author of the report. The investigation, which is the basis of the report, was conducted at the behest of the mother and upon agreement of the parties, without reservation as to inspection or cross-examination. Neither the mother nor her counsel asked the trial court for access to the report. In addition, her counsel on appeal stipulated the record minus the report. We will not address issues on appeal which have not been presented to the trial court. *In re Estate of Assmus*, 254 N.W.2d 159 (S.D.1977); *Chipperfield v. Woessner*, 84 S.D. 13, 166 N.W.2d 727 (1969).

The judgment is affirmed insofar as it grants custody to the father, and reversed insofar as it orders the mother to pay the father fifty dollars per month child support.

All the Justices concur.