**James Glenn MADSON, Plaintiff and Appellant,**

v.

**Lois Arlene MADSON, Defendant and Appellee.**

No. 13071.

Supreme Court of South Dakota.

Considered on Briefs Jan. 15, 1981.

On Reassignment.

Decided Dec. 2, 1981.

Helen Driscoll, Vermillion, for plaintiff and appellant.

Thomas Alberts of Engel & Alberts, Avon, for defendant and appellee.

DUNN, Justice (on reassignment).

James Madson (appellant) appeals from a judgment and decree of divorce which awarded to Lois Madson (appellee) custody of the parties' son. We reverse and remand.

The parties were married on September 5, 1970 and a decree of divorce was entered by the trial court on January 28, 1980. Their son was born on September 30, 1975.

The trial court granted both parties a divorce on the grounds of extreme cruelty and found that both parties were fit and proper persons to have custody of their son. The trial court found that the best interests of the child would be protected by placing the child in the custody of appellee, subject to appellant's reasonable rights of visitation. Appellant contends that the trial court abused its discretion in finding that appellee was fit to have custody of the parties' child.

■ The trial court has broad discretionary powers in determining the custody of minor children and this court will not interfere with that discretion unless there is a clear case of abuse presented by the record. *O'Connor v. O'Connor*, 307 N.W.2d 132 (S.D.1981); *Martin v. Martin*, 306 N.W.2d 648 (S.D.1981); *Engels v. Engels*, 297 N.W.2d 489 (S.D.1980); *Isaak v. Isaak*, 278 N.W.2d 445 (S.D.1979). "This exercise of judicial discretion, however, must have sound and substantial basis in the testimony." *Aulner v. Aulner*, 296 N.W.2d 533, 535 (S.D.1980); *Haskell v. Haskell*, 279 N.W.2d 903 (S.D.1979). The best interests of the child relative to its temporal, mental and moral welfare are the primary criterion to be considered by the trial court in custody determinations. SDCL 30–27–19; *Haskell v. Haskell, supra; Yager v. Yager*, 83 S.D. 315, 159 N.W.2d 125 (S.D.1968). We conclude that the trial court's determination does not have a sound and substantial basis in the testimony.

The record indicates that during the first seven years of the marriage appellant engaged in extra-marital sexual relationships, while appellee did not. In the spring of 1977, the parties agreed to experiment with the concept of an open marriage. Both parties participated in a number of liaisons between the spring of 1977 and the commencement of this divorce action in March of 1979.

During their marriage, both parties used marijuana and had experimented with other drugs. The child was allowed to pass a marijuana cigarette, but he was not allowed to smoke marijuana.

During one of appellee's liaisons, appellee engaged in sexual intercourse with one of her paramours on the ground in a public park with the child observing. Later the child was able to relate the intimate details of this sexual act to appellant. On other occasions, appellee would stay out all night with her paramours and arranged one weekend-long encounter.

In February of 1979, appellee and the child moved out of the marital home and in March of 1979, they moved into the home of another of her paramours in Gayville, South Dakota. This household consisted of the man's former wife, their daughter, and his teenage brother. While living with this paramour, the child again observed appellee while she was engaging in the act of sexual intercourse. The child was then four years old, and appellee testified that she "made no big deal of it" because she did not want the boy to think "it was bad or naughty." At trial, appellee admitted that she regularly had intercourse with this paramour.

Appellee and her son left the residence in Gayville in September of 1979 and established a home in Yankton, South Dakota. She obtained employment at the Yankton Community Day Care Center, where her son was enrolled. The divorce trial was held on October 3, 1979. At the end of October, appellee quit her job and she and her son returned to the Gayville residence.

■ The record indicates instances of marital misconduct on the part of both parties. "We must remember that marital responsibilities must not be confused with parental responsibilities." *Holforty v. Holforty*, 272 N.W.2d 810, 811 (S.D.1978). Fault for the purposes of divorce is not to be considered with regard to awarding custody of children except as fault may be relevant to the fitness of either parent. SDCL 25–4–45.1; *Holforty v. Holforty, supra.*

This court has held that where there is no evidence of a demonstrable effect of a parent's marital misconduct upon the child, it does not follow that the parent is an unfit person to have custody and that an award

of custody to that parent is not in the best interest and welfare of the child. *Haskell v. Haskell, supra; Holforty v. Holforty, supra; Spaulding v. Spaulding*, 278 N.W.2d 639 (S.D.1979); *Kester v. Kester*, 257 N.W.2d 731 (S.D.1977). The harmful effect of marital misconduct is self-evident, however, if it is committed in the presence of a child old enough to see and recognize the improprieties. *Haskell v. Haskell, supra; Spaulding v. Spaulding, supra.*

In this instance, the evidence is clear that the child observed appellee's indiscretions on two occasions. Even though the child was only two years old at the time of the first occurrence and four years old when the second indiscretion occurred, the child was able to relate the details of the sexual act to appellant. This indicates that the child was old enough to see and recognize the improprieties of appellee's acts. Furthermore, appellee continued her pattern of marital misconduct right up to the time of the divorce hearing and resumed it shortly after the hearing. As this court noted in *Yager v. Yager*, 83 S.D. at 319, 159 N.W.2d at 127: "The record here is not one of a single or occasional indiscretion, but a course of serious marital misconduct." See also *Hines v. Hines*, 78 S.D. 464, 104 N.W.2d 375 (1960).

In addition to the evidence that appellee associated with other men, the record also indicates that appellee frequently stayed away from her child until the early hours of the morning and planned a weekend-long rendezvous with one of her paramours. The home environment which appellee established for herself and her child in Gayville after separating from appellant was less than desirable. In this environment, in the presence of her son, appellee openly carried on an adulterous affair with her paramour, who was still living with his ex-wife and child. Appellant testified that this paramour threatened his life in front of his son and tried to belittle him in his son's eyes.

In conclusion, appellee's admitted conduct is more than sufficient to reverse the finding that she is a fit parent to have custody of the child.

The testimony regarding appellant's fitness to have custody of the child is unclear. The testimony conflicts as to whether the child also observed appellant having sexual intercourse with other women. Evidence was also introduced indicating that the child was underweight for his age when in appellant's care. Appellee testified that the child often suffered from diarrhea when she picked him up after visitations with appellant, that the child frequently was ill with fever after those visits, and that he vomited during the nighttime on several occasions after returning to appellee's home.

This court has recognized that where the mother by irresponsible conduct indicates that her care and custody would be detrimental to the welfare of the child as was shown here, custody may be awarded to the father or in extreme cases to someone else. *Septka v. Septka*, 80 S.D. 299, 122 N.W.2d 766 (1963). Other courts have recognized that even though a parent is fit to have custody, he may be denied custody if this is clearly inimical to the best interests of the child. *In re Marriage of Smith*, 269 N.W.2d 406 (Iowa 1978); 24 Am.Jur.2d *Divorce* § 789 (1966). "Neither parent is entitled to custody as a matter of right. The consideration paramount to all others is the welfare and best interests of the children." *Yager v. Yager*, 83 S.D. at 317, 159 N.W.2d at 127.

In light of our finding that appellee is an unfit parent to have custody of the child and in view of the over one and one-half years that have passed since the trial court granted custody to appellee, we remand this matter to the trial court for a redetermination of the custody of the child. The interests of the child are too important to be determined by a record that may be quite stale. *Edel v. Edel*, 97 Mich.App. 266, 293 N.W.2d 792 (1980); *Roudabush v. Roudabush*, 62 Mich.App. 391, 233 N.W.2d 596 (1975). The trial court should determine whether the welfare and best interests of the child will be served by granting custody to appellant or to a third party.

We reverse and remand for proceedings not inconsistent with this opinion.

MORGAN, HENDERSON and FOSHEIM, JJ., concur.

WOLLMAN, C. J., dissents.

WOLLMAN, Chief Justice (dissenting).

The record compiled in this action has at its center a detailed expose of both parties' extra-marital sexual relationships, an explicit recital of which would serve no useful purpose. It is uncontroverted that during approximately the first seven years of the marriage appellant engaged in sexual relationships with more than one woman, but that during this same period appellee remained faithful to her marriage vows. Sometime during the spring of 1977, appellant, in a purported attempt to strengthen what he considered to be a failing marriage, suggested to appellee that they both experiment with the concept of an open marriage. Appellant apparently had proposed this as early as 1973, but no understanding was reached between the parties until the later date. Both parties participated in a number of liaisons between early 1977 and the time of the commencement of the divorce in March 1979. Appellee and the child moved out of the marital home sometime in February of 1979, and in March they moved into the home of her lover in Gayville, South Dakota. This unconventional household consisted of the man's former wife, their daughter, and his teenage brother. Appellee and her son left that home in September of 1979 and established a home in Yankton. She obtained employment at the Yankton Community Day Care Center, where her son was enrolled. Because she received no support payments from appellant and because her public assistance payments for rent and utilities were not promptly received, appellee left her employment and her mobile home in Yankton and returned to the Gayville residence at the end of October 1979. During a December 1979 hearing on appellant's motion to reopen testimony, appellee testified that she planned to move from that home in time to register in January 1980 for the spring semester at Black Hills State College.

The testimony of the parties is sharply conflicting. Appellant admitted that he made attempts to make friends with appellee's paramours, but he denied that his purpose in so doing was to encourage his wife to have affairs. There was evidence that appellant had peered through a window of their mobile home while appellee was having sexual relations with one of appellant's friends. There was testimony that appellant customarily questioned appellee about the intimate details of her activities for the purpose of deriving sexual satisfaction from her answers.

Although appellee admitted that her son probably saw her in a compromising situation with a man other than appellant on two occasions, the testimony conflicts whether the child also observed his father with other women under similar circumstances.

Both parties expressed deep affection and concern for the welfare of their child. Both appellant and appellee testified that they intend to complete their educations so that they may be better able to insure their son's future security. The clear implication of both parties' testimony is that they desire to put the past behind them and in the future conduct themselves as mature adults.

Appellant argues that the trial court abused its discretion in finding that appellee was fit to have custody of the parties' child. Upon our review of the trial court's findings, we must give due regard to the opportunity that the trial court has to judge the credibility of the witnesses and to weigh their testimony. Accordingly, we will not set aside the trial court's findings unless they are clearly erroneous. SDCL 15–6–52(a); *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970). In reviewing findings of fact, we accept that version of the evidence, together with any reasonable inferences that may be drawn therefrom, that is favorable to the trial court's determination. *Watt v. Watt*, 312 N.W.2d 707 (S.D.1981); *Isaak v. Isaak*, 278 N.W.2d 445 (S.D.1979); *Schutterle v.*

*Schutterle*, 260 N.W.2d 341 (S.D.1977); *Larson v. Syverson*, 84 S.D. 31, 166 N.W.2d 424 (1969); *Beatty v. Depue*, 78 S.D. 395, 103 N.W.2d 187 (1960).

The record reflects instances of marital misconduct on the part of both parties. We must keep in mind, however, that marital responsibilities must not be confused with parental responsibilities. *Holforty v. Holforty*, 272 N.W.2d 810 (S.D.1978). It is also our rule that fault for purposes of divorce is not to be taken into account with regard to awarding custody of children except as fault may be relevant to the fitness of either parent. SDCL 25–4–45.1. In the light of the findings of the trial court and the great weight we must give to its considered judgment, I would hold that it did not err in finding appellee fit to have custody of the child.

Appellant next contends that the trial court abused its discretion in granting custody of the child to appellee. In awarding custody of any minor child, the trial court must be guided by what appears, from all the facts and circumstances, to be in the best interests of the child. SDCL 30–27–19; *Isaak v. Isaak*, supra. As we said in *Isaak*, "The trial court has broad discretion in awarding custody of minor children, and we will not interfere with the exercise of such discretion unless the record presents a clear case of abuse of discretion." 278 N.W.2d at 446. See also *Engels v. Engels*, 297 N.W.2d 489 (S.D.1980); *Haskell v. Haskell*, 279 N.W.2d 903 (S.D.1979); *Spaulding v. Spaulding*, 278 N.W.2d 639 (S.D.1979).

Appellant makes much of his allegations that the child observed appellee's indiscretions on two occasions. The first occurrence would have taken place when the child was two years old, the second when the child was four. In *Spaulding v. Spaulding*, supra, we said, "If the [parent's] misconduct is committed in the presence of a child old enough to see and recognize [the] improprieties as such, then the harmful effect of [the parent's] bad example upon the child is self-evident." 278 N.W.2d at 641.

One parent seeking to take custody from the other has a burden of showing a harmful effect on the child caused by the other's conduct. *Kester v. Kester*, 257 N.W.2d 731 (S.D.1977). The trial court could have reasonably concluded that the child was too young to recognize appellee's conduct as improper. I cannot say that the trial court erred in finding that appellant had not met his burden of showing that appellee's conduct had had a harmful effect on the child. Moreover, there was evidence of equal competence to the effect that the child had observed appellant engage in sexual intercourse with other women. We are not here engaged in a domestic disciplinary action where the custody of a child becomes a means of punishing the guilty or rewarding the innocent. *Holforty v. Holforty*, supra.

There was testimony from which the trial court could well have found that the child was underweight for its age when in appellant's custody. Appellee testified that the child was nearly always suffering from diarrhea when she picked him up after visitation with appellant, that the child was frequently ill with a fever after those visits, and that he vomited during the nighttime on several occasions after returning to appellee's home.

Neither party to the marriage presented an attractive choice to the trial court as a candidate for custody. It requires no reversion to puritanism to say that by their hedonistic indulgence of their sexual appetites the parties had created an intolerable marital state. The trial judge was faced with a difficult choice. His finding that it would be in the best interests of the child that custody be granted to appellee necessarily implied a determination that appellee will so conduct herself as not to place the child in circumstances that would be damaging to its welfare. Given the choice it had, I cannot say that the trial court clearly abused its discretion in determining that appellee, the victim of what can only be characterized as a case of arrested emotional development on the part of her husband, offered a better hope of providing an acceptable home for the child.