**Renee Denise HAAK, Plaintiff and Appellee,**

v.

**Craig HAAK, Defendant and Appellant.**

**No. 13550.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 26, 1982.

Decided Aug. 18, 1982.

W. A. Hackett of Austin, Hinderaker & Hackett, Watertown, for plaintiff and appellee.

Rory King of Siegel, Barnett & Schutz, Aberdeen, for defendant and appellant.

DUNN, Justice.

The husband, Craig Haak, appeals from a judgment of divorce which granted custody of the children to his former wife, Renee Denise Haak. We reverse the award of custody to the wife.

At the time the divorce action was commenced the parties had two children: a daughter age seven and a son age five. During the marriage Renee had romantic interests in several men. Meetings with these men commonly occurred in the Haaks' home while the children were there but Renee was just as often absent from the home to meet other men. Renee admitted her romantic episodes to members of the community. The children were aware that their mother was "messing around" with a "boy friend" and they expressed their disapproval of the situation. The daughter stated that she did not want one of her mother's paramours for her daddy. There was also evidence that Renee failed to supervise the children.

The court found that Craig had made threats of suicide and threats to burn down the house. Only a single, insubstantial suicide threat appears in the record, however. In addition, only Renee testified to Craig's threats to burn down the house. These threats occurred when Craig became frustrated with home repairs. He did nothing to carry the threats out. Finally, because of Craig's various work endeavors as a part-time farmer, sheepgrower, lawyer and policeman, the court found he had a whimsical attitude toward work. Even with these faults a number of witnesses testified that Craig had an excellent relationship with his children. Nevertheless, custody was awarded to Renee on the basis of the court's finding of Craig's lack of stability.

Claiming Renee's conduct made her unfit as a mother, Craig contends that the court abused its discretion in awarding custody of the children to her.

Both the children made comments which inferred that they were aware of their mother's conduct and its impropriety.

This court has held that where there is no evidence of a demonstrable effect of a parent's marital misconduct upon the child, it does not follow that the parent is an unfit person to have custody and that an award of custody to that parent is not in the best interest and welfare of the child. *Haskell v. Haskell,* supra [279 N.W.2d 903]; *Holforty v. Holforty,* supra [272 N.W.2d 810]; *Spaulding v. Spaulding,* 278 N.W.2d 639 (S.D.1979); *Kester v. Kester,* 257 N.W.2d 731 (S.D.1977). The harmful effect of marital misconduct is self-evident, however, if it is committed in the presence of a child old enough to

see and recognize the improprieties. *Haskell v. Haskell,* supra; *Spaulding v. Spaulding,* supra.

*Madson v. Madson,* 313 N.W.2d 42, 43–44 (S.D.1981).

The court's primary consideration when awarding custody is the best interest of the children and not the shortcomings of the custodial parent. SDCL 30–27–19; *Watt v. Watt,* 312 N.W.2d 707 (S.D.1981); *Kester v. Kester,* 257 N.W.2d 731 (S.D. 1977). In determining this question the court exercises broad discretion which must have a sound and substantial basis in the testimony. *Masek v. Masek,* 89 S.D. 62, 228 N.W.2d 334 (1975). Craig's threats to burn the house do not have such a basis. The court's finding concerning Craig's suicide threat is clearly erroneous. SDCL 15–6–52(a); *Kester v. Kester,* supra. Moreover, there is no evidence to prove that Craig's insubstantial suicide threat or whimsical work attitude affected his good relationship with his children. *Watt v. Watt,* supra; *Kester v. Kester,* supra. These shortcomings are not of such a sound and substantial nature as to deny the father custody or affect the best interests of the children.

The children were able to recognize the impropriety of their mother's conduct while they had a good relationship with their father unaffected by his shortcomings. For this reason it was in the children's best interest that their father be awarded custody. The trial court abused its discretion in awarding custody to the mother.

The judgment of divorce, insofar as it awarded custody to the wife, is reversed and remanded.

MORGAN and HENDERSON, JJ., concur.

WOLLMAN, C.J., and FOSHEIM, J., dissent.

WOLLMAN, Chief Justice (dissenting).

Had the trial court entered findings of fact consistent with those entered by the majority opinion and then awarded custody to appellant, I probably would have joined in affirming the decision. As it is, however, although the majority opinion purports to follow the principles that this court is to apply when reviewing custody awards, it then goes on to reach that result which it feels the trial court should have reached.

In *Watt v. Watt,* 312 N.W.2d 707, 709–10 (S.D.1981), we said:

In reviewing a trial court's findings, we must give due regard to the opportunity of the trial court to judge the credibility of the witnesses and to weigh their testimony. The court's findings will not be set aside unless they are clearly erroneous. SDCL 15–6–52(a); *In re Estate of Hobelsberger,* 85 S.D. 282, 181 N.W.2d 455 (1970). Moreover, in reviewing findings of fact, we accept that version of the evidence, together with any reasonable inferences that may be drawn therefrom, that is favorable to the trial court's determination.

The trial court found that appellant "would not be able to provide a stable influence upon the children in view of his threats in the past to burn down the house, the threats of suicide, and the [appellant's] whimsical attitude toward his work . . . ." With respect to the suicide threats, appellee testified as follows:

A. He [appellant] got really upset and he took this gun from the top of the mantle in the dining room and he said you don't need me anymore, you're all better off without me and I said what are you talking about and he started to go out the door and then I realized what he was doing and I begged him not to go and I pleaded with him and I tried to stop him at the door and he raised his hand with the gun in his hand as if he was going to hit me with the butt of the gun and this went on for several minutes in front of the children. They were standing within five feet of us.

Q. What were the children doing?

A. They were crying.

Q. Were you crying?

A. Yes, sir.

Q. Did you know whether or not the gun was loaded?

A. I did know he kept loaded guns in the house all the time.

Q. Did you think he was going to commit suicide?

A. Yes.

Q. On other occasions has your husband admitted to you that he had mental problems?

A. Yes.

Q. Did you believe that when he told you that?

A. Yes.

Q. Were you afraid of him?

A. Very much so.

Q. In any event, after you pleaded with him not to kill himself, what happened?

A. Eventually he walked out of the house and he got halfway across the yard towards the barn. Regan was standing there and she let out a scream and he just stopped. She just kept screaming, then eventually he came back and put the gun up. He said you're better off without me, I'm going away. He started walking and I didn't see him for I supposed [sic] about two or three hours.

To characterize this suicide threat as "insubstantial" is to reduce what must have been a terror-filled experience for appellee and her children to the level of a daily segment of a television soap opera.

Likewise, the majority brushes aside appellant's threats to burn down the house by pointing out that only appellee testified to these threats (as if her testimony required corroboration), and by pointing out that appellant did nothing to carry out his threats. As with the suicide threat, one can only be relieved that appellant did not carry out the threats to burn down the home, but that is hardly reason to dismiss the threats as having no bearing upon his emotional stability and perforce his fitness to have custody of the children.

To say that the trial court did not abuse its discretion in awarding custody of the children to appellee is not to laud appellee's fitness as a parent, for truly the trial court was faced with a situation where both parents had manifested, appellee by her indulgence in her hedonistic view of life and appellant by his emotional instability, their profound shortcomings as custodial parents. Cf. *Madson v. Madson*, 313 N.W.2d 42 (S.D. 1981). Faced with a difficult decision and having the benefit of judging the demeanor and credibility of the witnesses during a trial that resulted in some 379 pages of transcript, the trial court reached a decision that finds support in the evidence and therefore should not be reversed on appeal merely because the members of this court do not approve of appellee's life-style.

I am authorized to state that Justice FOSHEIM joins in this dissent.