**Ralph NAUMAN, Plaintiff and Appellant**

v.

**Cheryl A. NAUMAN, Defendant and Appellee.**

**No. 13890**

Supreme Court of South Dakota.

Argued March 21, 1983.

Decided July 20, 1983.

Rehearing Denied Aug. 17, 1983.

for the custody change was that defendant was openly living with a man who was not her husband; was not abiding by the court's visitation order; and was not properly attending to the dental needs of the children. Plaintiff appeals from the trial court's order refusing to change custody and ordering him to pay $200 for defendant's attorney's fees. We affirm.

The issue regarding the trial judge's refusal to recuse himself has not been preserved for appeal because the trial judge did not rule on plaintiff's motion for change of judge. Plaintiff concedes this fact. Justice Dunn recently stated the applicable rule in *American Federal Savings & Loan Ass'n, Etc. v. Kass*, 320 N.W.2d 800, 803 (S.D.1982) (citations omitted, emphasis added).

> If the trial court fails to decide or rule on a motion, nothing is presented for review in the appellate court. Where a ruling on a motion or objection is reserved by the court, the moving party must subsequently obtain a *direct ruling* in order to preserve the matter for appellate review. The burden of demanding a ruling rests upon the party desiring it. 'If a party permits the court to proceed to judgment without action upon his motion or objection, he will be held to have waived the right to have the motion or objection acted upon.'

Plaintiff's claim that the trial court abused its discretion in refusing to vest custody with him because defendant hampered the exercise of his visitation privileges and failed to promptly attend to the dental needs of the children simply is not substantially supported.

Plaintiff's primary contention is that the best interests of the children require a custody change because defendant concedes she has a live-in boyfriend, Daniel B. Cunningham, Jr. Plaintiff claims defendant's lifestyle is harmful to the morals of the children; that it causes them to be confused and defensive; and that the live-in relationship lacks permanency and thus exposes the children to the probable trauma of losing their "father figure." It appears the chil-

Alan F. Glover of Denholm & Glover, Brookings, for plaintiff and appellant.

Lee D. Anderson of Hanson, Kaye, Stiles & Anderson, Mitchell, for defendant and appellee.

FOSHEIM, Chief Justice.

The parties were divorced on August 21, 1980. The divorce decree granted defendant custody of the two children, with liberal visitation rights for plaintiff. By Orders dated December 18, 1980, and January 19, 1981, plaintiff was held in contempt of court for failure to pay alimony and child support. The January order, affirmed on appeal, *Nauman v. Nauman*, 320 N.W.2d 519 (S.D.1982), specified plaintiff's visitation rights. Plaintiff subsequently filed an affidavit and application to show cause why custody of the children should not be changed to him. Plaintiff also filed an affidavit for change of judge. The basis

dren have a good relationship with, and are quite fond of, Mr. Cunningham.

By allowing Mr. Cunningham to share her home, defendant has created a situation potentially dangerous to the well-being of the children. Regardless of whether they comprehend[1] the ramifications of their mother's actions or see their mother's actions as "misconduct,"[2] the arrangement places the children in the position of justifying their family arrangement to their friends and schoolmates. It also exposes them to the real possibility of mental pain and emotional trauma if Mr. Cunningham decided to leave. For these reasons, defendant's actions evidence a cavalier attitude toward the emotional needs and stability of her children which we do not condone.

The situation has changed, however, since the trial court's decision was entered. At the hearing on plaintiff's motion, Mr. Cunningham testified that he and defendant planned to marry. Defendant's appeal brief states their marriage was planned for December 26, 1982. At oral argument plaintiff conceded that defendant and Mr. Cunningham were in fact married on that date.

In *Krueger v. Stevens,* 90 S.D. 641, 244 N.W.2d 763 (1976), we recognized a marriage for purposes of deciding a custody appeal, even though it was not a fact revealed by the settled record. In affirming the trial court's order leaving custody with the plaintiff, we noted:

> [Plaintiff] acknowledged that a woman had been living with him and his two sons for some time. *We were advised in the briefs and at oral argument that plaintiff married this woman in September of 1975.*

. . . .

> With respect to plaintiff's personal relationship with his live-in female companion, however illicit that relationship may have been by conventional standards it has ripened into a formalized marriage.

*Id.* 244 N.W.2d at 763–64 (emphasis added). We did not, however, then tie that recognition of the marriage to judicial notice. *Kruger,* therefore recognized a fact on appeal based only on briefs and argument. That ordinarily would be a departure from our consistent position that we will not consider facts outside the settled record. As we recently stated in *Caneva v. Miners and Merchants Bank,* 335 N.W.2d 339 (S.D.1983), *quoting from Pearson v. Adams,* 279 N.W.2d 674, 676 (S.D.1979):

> On appeal, the record and the transcript, if included in the record, imparts an absolute verity and is the sole evidence of the trial court's proceedings. While all parties are expected to protect themselves on the record, and all parties are obligated to see that the settled record contains all matters necessary for the disposition of the issues raised on appeal, the ultimate responsibility for presenting an adequate record on appeal falls upon the appellant.

> If the record is incomplete or incorrect, the remedy is by appropriate action or proceedings in the trial court to secure a correction thereof. (citations omitted)

▮ By both statute, SDCL 19–10–2(2) and 19–10–3,[3] and case law, even though it be a fact of which the court does not possess actual present knowledge, *State v. Larson,* 81 S.D. 540, 138 N.W.2d 1 (1965), judicial notice may be taken of public or official records. *Walz v. City of Hudson,* 327 N.W.2d 120 (S.D.1982); *Elfring v. Paterson,*

---

1. At the time of the hearing on this motion the parties' children were 7 and 4 years old respectively.

2. For a review of some of this court's cases discussing parental sexual misconduct and its effect on their children see *Haak v. Haak,* 323 N.W.2d 128 (S.D.1982); *Rivers v. Rivers,* 322 N.W.2d 864 (S.D.1982); *Madson v. Madson,* 313 N.W.2d 42 (S.D.1981); *Haskell v. Haskell,* 279 N.W.2d 903 (S.D.1979); *Spaulding v. Spaulding,* 278 N.W.2d 639 (S.D.1979).

3. SDCL 19–10–2(2) reads: A judicially noticed fact must be one not subject to reasonable dispute in that it is either

. . . .

(2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

SDCL 19–10–3 reads: A court may take judicial notice, whether requested or not.

66 S.D. 458, 285 N.W. 443 (1939). Defendant's marriage is a matter of public record[4] of which we can, and do, take cognizance. It would be an idle act to remand the proceedings to find what we know, and can accept, as factual.

■ This marriage renders plaintiff's custody objections moot. In *Kruger, supra,* we implicitly so held under similar facts. The marriage defeats plaintiff's argument that since "both parties have good homes for the children, it seems reasonable that the home without the live-in arrangement would provide a better environment for the children." It appears defendant provides the children with a happy home and good care. Since the primary criterion in a custody case is the best interests of the children, rather than the shortcomings of the custodial parent, *Haak v. Haak,* 323 N.W.2d 128 (S.D.1982), we affirm the trial court's denial of defendant's motion for change of custody.

■ The remaining issue raised by plaintiff is whether the trial court's order that he pay defendant's trial attorney fees of $200 was an abuse of discretion. Defendant requested an attorney fee award of $525. We believe the allowance of $200 is reasonable and proper as defendant was an unemployed college student at the time. *Lien v. Lien,* 278 N.W.2d 436 (S.D.1979). Defendant has asked this court to award her $840 for appellate attorney's fees. Based on the record before us we grant her $300.

The order is affirmed.

MORGAN and HENDERSON, JJ., concur.

WOLLMAN, J., concurs specially.

DUNN, J., dissents.

WOLLMAN, Justice (concurring specially).

I join in the majority opinion's decision insofar as it deals with the merits of the case. I write specially only to express my view that it is not necessary for us to resort to the formalities of judicial notice as set forth in our rules of evidence in order to accept appellee's counsel's representation that appellee and her boyfriend were married on December 26, 1982, a fact that plaintiff acknowledges the existence of. Just as we did in *Krueger v. Stevens,* 90 S.D. 641, 244 N.W.2d 763 (1976), we can accept this fact for purposes of our decision. The rule set forth in *Pearson v. Adams,* 279 N.W.2d 674 (S.D.1979), applies to matters up to the time that the record is settled for appellate purposes and has no application to events occurring after that date.

DUNN, Justice (dissenting).

This court has held on many occasions that a parent's maintaining of an illicit relationship which does not affect the children is not a bar to receiving custody of minor children. *Krueger v. Stevens,* 90 S.D. 641, 244 N.W.2d 763 (1976); *Wiesner v. Wiesner,* 80 S.D. 114, 119 N.W.2d 920 (1963).

However, we have also consistently held that an illicit relationship which does affect the morals and welfare of the children is a bar to receiving custody of children, and we have laid down one clear and express standard in determining whether the parents' immoral activities do affect the morals and well-being of the children. In *Spaulding v. Spaulding,* 278 N.W.2d 639, 641 (S.D.1979), Justice Fosheim stated: "If the mother's misconduct is committed in the presence of a child old enough to see and recognize her improprieties as such, then the harmful effect of her bad conduct upon the child is self-evident." This standard was restated and reemphasized in *Haskell v. Haskell,* 279 N.W.2d 903 (S.D.1979) and in *Madson v. Madson,* 313 N.W.2d 42 (S.D.1981).

Here, we have the mother openly sleeping with her paramour in a room where these two children, ages 7 and 4, had to pass through to reach the bathroom. This was

---

**4.** The Public Health Statistics Program, at State File No. 82–008285, reveals a marriage between Cheryl A. Nauman and Daniel B. Cun-

ningham, Jr., on December 26, 1982, in Davison County, South Dakota.

not an isolated incident, but a course of immoral conduct that continued for months. The trial court took comfort from the fact that the mother and her paramour were very forthright with the children, had explained that the relationship was proper because of their affection for each other, and of their intention to get married. This only compounds the effect in my opinion. They will grow up thinking this conduct is acceptable. I see no great advantage to the children becoming amoral instead of immoral. One really wonders what this mother could say to one of the children in a few years when they bring home a girl friend or a boyfriend and expect to sleep with them.

The majority, relying on *Krueger, supra,* now states that this immoral conduct, which had continued for months in front of the children, has been cured by a marriage ceremony which apparently occurred while this case to determine the mother's fitness to retain custody of the children was on the way to the Supreme Court. This bit of intelligence came to the court in a self-serving statement by the mother's attorney during oral argument and apparently from taking judicial notice of the marriage records of Davison County. There is nothing in the record or the briefs of the parties to substantiate this fact. We are sitting as an appeal court deciding whether the action of the trial court can be affirmed on the record before it and not on some statement outside of the record that was not passed on by the trial court or on official marriage records. We are really expanding our scope of review. In addition to the old standard, which only permitted a review of the record before the trial court, we now must examine and take judicial notice of all of the official records in the various counties of South Dakota.

Regardless of all this, we are considering the fitness of this mother to have custody based on immoral conduct that had continued in full view of the children for months. We should be concerned with the state of mind and moral fitness of this mother that permitted these activities rather than her marital status at the time of this decision.

I see no parallel with the *Krueger, supra,* case, except for the fact that the father there was living with a woman who was not his wife and married her before the case came to the Supreme Court. There was no contention in *Krueger* that the father and his live-in girl friend had carried on immoral activities in full view of the children or that he had "forthrightly" explained that their immoral acts were proper. It should also be remembered that the mother in *Krueger* had abandoned those boys, leaving the father to care for them, while she ran off to marry her new lover; that her new marriage was on the rocks; and, that the trial court there was faced with real problems in removing the custody of the children from the father and granting custody to one who had exhibited like immorality plus a lack of stability.

I would reverse.