**Robert J. WOLFF, Plaintiff and Appellee,**

v.

**Arla WOLFF, Defendant and Appellant.**

**No. 14261.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 13, 1984.

Decided June 20, 1984.

Rehearing Denied July 26, 1984.

Timothy T. Weber of Weber & Kallenberger, Eureka, for plaintiff and appellee.

Jauane J. Bleau, Vermillion, for defendant and appellant.

FOSHEIM, Chief Justice (on reassignment).

The trial court judgment granted both parties a divorce. Arla Wolff (Appellant) appeals from that part of the judgment which divided the property and granted custody of the child to her husband, Robert J. Wolff. We reverse.

Arla and Robert were married in 1975. One child, a son, was born in 1977. However, Arla has two children from a previous marriage. In August of 1980, Appellant left the marital home in Eureka, South Dakota, and enrolled at the University of South Dakota at Vermillion. She testified Robert was a heavy drinker and had numerous affairs with other women.

The parties' son remained with his father in Eureka until November of 1980, when he joined his mother in Vermillion. After returning to Eureka for Christmas in December, Arla and the son returned to the University for the 1981 spring term. The son was returned to his father at Eastertime. He has continued since then to reside in Eureka with his father. Appellant left school in 1981, and found employment with Northwestern Bell in Sioux Falls. In 1982, she resumed living with a man with whom she had cohabited prior to her marriage to Robert. Since prior to trial, however, she had been living with her parents in Omaha, Nebraska.

At the divorce trial, Arla conceded she had associated infrequently with the son during the preceding two years. She claimed, however, that this infrequency was caused by Robert preventing her from talking to their son on the telephone and because appellee refused to let her take the child from Eureka at different times. The last time she tried, Robert beat her severely.

Since the summer of 1982 Robert and another woman have been living in the home as husband and wife. This woman's child also resides in the household. She testified that the parties' son has seen her and Robert in bed together.

The testimony shows that from the fall of 1978 to the winter of 1980, appellee had an ongoing homosexual relationship with a juvenile who moved into the home after the separation. Some of these homosexual acts were performed in the presence of the boy. Appellee admitted allowing this person to babysit his son. The father had another boarder who entertained his out-of-town girlfriend in his room on weekends and for a week or two at a time. Although appellee has demonstrated a capacity for extreme violence, there is no evidence that he has physically abused this child.

The parties' son was not interviewed by the court. Home studies, however, were conducted on both homes. The trial court found that both parties were fit and proper persons to have custody of the child, but concluded that it was in the child's best interest that Robert be granted custody.

■ Arla contends that the trial court abused its discretion in granting custody to Robert. In addressing this contention we are mindful that the trial court has broad discretion in custody determinations. *Haskell v. Haskell*, 324 N.W.2d 423 (S.D.1982). Its decision will be reversed only upon a clear showing of abuse of discretion. *Hansen v. Hansen*, 327 N.W.2d 47 (S.D.1982).

■ The primary consideration in custody determination is the best interest of the child. SDCL 30–27–19; *Haak v. Haak*, 323 N.W.2d 128 (S.D.1982). With regard to the live-in relationship between Robert and his girlfriend, we have recognized that the harmful effect of parental misconduct committed in the presence of a child old enough to perceive the misconduct is self-evident. *Nauman v. Nauman*, 336 N.W.2d 662 (S.D.1983); *Rivers v. Rivers*, 322 N.W.2d 864 (S.D.1982); *Spaulding v. Spaulding*, 278 N.W.2d 639 (S.D.1979). Furthermore, maintaining and exposing the child to an active male homosexual, plus another boarder carrying on open girlfriend liaisons is not conducive to raising this boy in a wholesome home environment. While the mother's nomadic existence in the past has not been exemplary, she was living in a stable home with her parents at the time of trial. From our review of the record, we conclude awarding custody to the father was an abuse of discretion.

The trial court found marital assets of $44,401. Of these assets, Arla was awarded $7,200 as her half of the equity in the marital home, a 1978 Ford Thunderbird, items she owned before the marriage, and the personal property she had in her possession at the time the divorce was granted. Appellant contends the trial court abused its discretion in dividing the property in two specific areas.

■ During the course of the marriage Robert accumulated fifty shares of stock of the Wolff Company, the family business for which he worked. The trial court treated twenty-five of the fifty shares as marital property and considered the remaining twenty-five as gifts. The testimony concerning the ownership of the shares of stock was conflicting and confusing, and we find no error in the trial court's resolution of this issue.

■ The trial court concluded that Arla had depleted marital assets more than she contributed to them. Arla contends that this conclusion is unsupported by the evidence. We disagree. Arla incurred substantial expenses while going to school, which to a large degree Robert was responsible for paying. In addition to incurring substantial school and personal expenses,

Arla persuaded Robert to invest $15,000 with a mortgage on the unencumbered marital home in a concert promotion venture. This investment proved ill-advised because the promoter absconded with the money. Also, the evidence indicates that Arla made no substantial contribution to the acquisition of marital property prior to her departure from the marital home in 1980.

Both Arla and Robert were 32 years of age at the time of trial. Both are in good health. Arla has five semesters of college; Robert has two years of college. As indicated above, Robert is employed in the family business in Eureka. At the time of trial, Arla was working as a sales representative for an Omaha, Nebraska, firm, earning between $500 and $750 a month.

■ In *Hansen v. Hansen*, 273 N.W.2d 749 (S.D.1979), we listed the following seven factors to be considered in the distribution of assets: (1) duration of the marriage; (2) value of the property; (3) ages of the parties; (4) health of the parties; (5) competency of the parties to earn a living; (6) contributions of each party to the accumulation of the property; and (7) income producing capacity of the parties' assets.

■ It is settled law that trial courts have broad discretion in making divisions of property and their decisions will not be set aside absent a clear abuse of discretion. *See, e.g., Watt v. Watt,* 312 N.W.2d 707 (S.D.1981); *O'Connor v. O'Connor,* 307 N.W.2d 132 (S.D.1981). After reviewing the evidence and taking into consideration the factors set forth in *Hansen,* we conclude there was no clear abuse of discretion concerning the division of property.

Arla is awarded $1,000 attorney fees for this appeal.

The judgment is reversed.

DUNN, MORGAN and HENDERSON, JJ., concur.

WOLLMAN, J., dissents.

WOLLMAN, Justice (dissenting).

The trial court was faced with a difficult decision in this case, given the fact that neither parent presented a fully acceptable home setting for the young boy. On balance, however, the trial court's findings of fact are not clearly erroneous, and the award of custody to Robert did not constitute a clear abuse of discretion.

At the outset, it should be noted that although the juvenile homosexual renter testified that he and Robert had had a homosexual relationship, Robert unequivocally denied any such relationship. Significantly, the trial court made no finding with respect to this issue. Also, it should be noted that Robert ordered the juvenile to leave the home on December 28, 1980.

In its findings of fact and conclusions of law, the trial court set forth the following reasons for awarding custody to Robert:

(a) Except for brief periods of time, the minor child has lived his whole life at Eureka, South Dakota, where he has close ties to family (especially his grandmother), friends, church and school.

(b) [Robert] has provided a stable home for the minor child at Eureka, South Dakota.

(c) [Robert] has provided for the necessities of the child in a suitable manner, before and since the separation of the parties.

(d) [Robert] is employed full-time in an old, established family business and thus, has better than average security. [Robert] appears to be permanently located, with an interest in the business.

(e) [Arla] has a nomadic history of moving from one pursuit, husband, or boyfriend, and location to another, although her present surroundings appear, in all respects, to be suitable. She lives with her parents and two sons from a previous marriage, in Omaha, Nebraska.

Although the home study indicates that Robert has a reputation for being "arrogant, obnoxious and hard to deal with personally," we must remember that the trial court's primary consideration in custody determination is the best interests of the

child and not the shortcomings of the custodial parent. SDCL 30–27–19; *Haak v. Haak,* 323 N.W.2d 128 (S.D.1982). With regard to the live-in relationship between Robert and his girlfriend, we have recognized that the harmful effect of parental misconduct committed in the presence of a child old enough to perceive the misconduct is self-evident. *Nauman v. Nauman,* 336 N.W.2d 662 (S.D.1983). *Rivers v. Rivers,* 322 N.W.2d 864 (S.D.1982); *Spaulding v. Spaulding,* 278 N.W.2d 639 (S.D.1979). Such conduct, however, does not necessarily bar a determination that a parent is a fit person to have custody. *See, e.g., Hansen v. Hansen,* 327 N.W.2d 47 (S.D.1982); *Krueger v. Stevens,* 90 S.D. 641, 244 N.W.2d 763 (1976). Although I do not necessarily condone the husband's living arrangement, he "is committing no crime such as adultery (our Legislature abolished adultery as a crime, 1976 S.D.Sess.L. ch. 158, § 22–8) nor [is he] engaged in criminal conversation (nonexistent tort, *see Hunt v. Hunt,* 309 N.W.2d 818 (S.D.1981))." *Rivers, supra,* 322 N.W.2d at 865 (Henderson, J., concurring in result). In addition, in its memorandum opinion, which was incorporated into the findings of fact and conclusions of law, the court specifically found that there was no evidence that the living arrangement had adversely affected the child. *Cf. Rivers, supra.* This finding negates the deleterious-effect presumption set forth in the *Nauman, Rivers,* and *Spaulding* cases, *supra.*

In summary, then, I would defer to the trial court's opportunity to judge the credibility of the witnesses on the basis of their demeanor on the witness stand. As the trial court indicated in its memorandum decision, "It is obvious that, somewhere, there has been a contemptuous disregard for the truth."

I agree with the majority opinion with respect to the division of property and the award of attorney's fees on appeal.